UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CR-20118-ALTMAN/LETT
18 U.S.C. § 371
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

v.

STANLEY GORDON VAN METER II,

Defendant.
_______________________________/

FILED BY BM D.C.
Mar 30, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**INFORMATION**

The United States Attorney charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

**The Medicare Program**

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into multiple program "parts," which helped cover specific services: Part A (hospital insurance), Part B (medical insurance), Part C (Medicare

Advantage), and Part D (prescription drug coverage).

4. When seeking reimbursement from Medicare for provided benefits, items, or services, providers submitted the cost of the benefit, item, or service provided together with a description and the appropriate "procedure code."

5. Medicare would not pay claims for items and services that were procured through kickbacks in violation of the Federal Anti-Kickback Statute.

**Over-the-Counter COVID-19 Tests**

6. Starting on or about April 4, 2022, and continuing through the duration of the COVID-19 public health emergency, Medicare covered and paid for over-the-counter ("OTC") COVID-19 tests at no cost to beneficiaries. This program was intended to ensure that beneficiaries had access to COVID-19 tests that they needed to stay safe and healthy during the COVID-19 pandemic. Eligible providers were permitted to distribute to beneficiaries OTC COVID-19 tests that were approved, authorized, or cleared by the U.S. Food and Drug Administration.

7. Medicare would not pay for more than eight OTC COVID-19 tests per calendar month, per beneficiary. Providers could distribute OTC COVID-19 tests only to beneficiaries who requested them, and providers were required to keep documentation showing a beneficiary's request for the tests. Medicare did not cover OTC COVID-19 tests distributed to beneficiaries during an inpatient stay at a hospital or skilled nursing facility.

**The Defendant, Related Individuals, and Related Entities**

8. **STANLEY GORDON VAN METER II** was a resident of Lake County, Florida, and the President and CEO of Medek Health Systems LLC.

9. Individual 1 was a Miami-Dade County resident and the rendering provider for Company 1.

10. Individual 2 was a Miami-Dade County resident and the chief executive officer of Company 1.

11. Individual 3 was a Miami-Dade County resident and the chief operating officer of Company 1.

12. Mansinh Chaudhari, a/k/a "Monsi Koova," was a resident of Illinois and the owner of Company 2.

13. Chantal Swart was a resident of Palm Beach County, Florida, and the owner of Company 3.

14. Company 1 was a medical center located in Miami-Dade County, Florida, and a Medicare provider.

15. Company 2 was a consulting company located in New York.

16. Company 3 was a consulting company located in Palm Beach County, Florida.

17. Medek Health Systems LLC ("Medek") was a software and health care company located in Lake County, Florida.

**Conspiracy to Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

18. From in or around July 2022 and continuing through in or around February 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**STANLEY GORDON VAN METER II,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual 1, Individual 2, Individual 3, Monsi Koova, Chantal Swart, and others known and unknown to the United States Attorney, to commit offenses against the United States, that is:

a. to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by knowingly

and willfully soliciting and receiving any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

19. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting, receiving, offering, and paying kickbacks in return for referring Medicare beneficiaries to receive OTC COVID-19 tests; (b) submitting and causing the submission of Medicare claims for OTC COVID-19 tests on Company 1's behalf; (c) causing Medicare to make payments to Company 1 as a result of such claims; and (d) diverting the proceeds for the defendant's and co-conspirators' personal use, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

20. **STANLEY GORDON VAN METER II** solicited Medicare beneficiaries to whom Medek provided OTC COVID-19 tests in two ways: (1) digital advertising and website

traffic, and (2) the payment of kickbacks to Company 2 and Company 3, which had pre-existing Medicare beneficiary customers.

21. Medek paid Company 2, at **STANLEY GORDON VAN METER II**'s direction, to obtain Medicare beneficiary information for Medek to submit over 600 claims for OTC COVID-19 tests on behalf of Company 1. The beneficiaries had no prior relationship with Medek or Company 1, and dozens of them subsequently complained to Medicare, Company 1, and Medek that they never requested or did not recall requesting OTC COVID-19 tests.

22. **STANLEY GORDON VAN METER II** paid Company 3 to obtain Medicare beneficiary information for Medek to submit over 38,000 claims for OTC COVID-19 tests on behalf of Company 1. The beneficiaries had no prior relationship with Medek or Company 1, and thousands of them subsequently complained to Medicare, Company 1, and Medek that they never requested or did not recall requesting OTC COVID-19 tests.

23. In total, **STANLEY GORDON VAN METER II** caused Medek to submit over 100,000 claims to Medicare on behalf of Company 1, requesting over $19.7 million in reimbursement for OTC COVID-19 tests. As a result, Medicare reimbursed Company 1 approximately $8.7 million.

24. Medek, under **STANLEY GORDON VAN METER II**'s direction, sent weekly invoices to Company 1 soliciting Medicare kickbacks, with different amounts that Company 1 was to pay Medek per Medicare beneficiary depending in part on how Medek obtained that beneficiary's Medicare information. As a result, Company 1 paid Medek over $4.7 million in Medicare proceeds for OTC COVID-19 tests.

25. Of the more than $4.7 million in Medicare proceeds for OTC COVID-19 tests that Company 1 paid Medek, $4,061,387 resulted from **VAN METER II**'s kickbacks to Company 2 and Company 3.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

26. On or about September 14, 2022, Medek, at **STANLEY GORDON VAN METER II**'s direction, entered into a "Memorandum of Understanding" with Company 2, in which Medek agreed to pay Company 2 "$2.00 per test kit reimbursed claim for each qualified [Medicare] client for each month that the test kit is reimbursed."

27. On or about October 28, 2022, **STANLEY GORDON VAN METER II** sent text messages to Individual 1 that stated, "I just got a note from [Individual 2]" "Says you guys don't wanna do the Test kits…" Individual 1 responded, "He called me" "Our lawyer said it's a bad idea."

28. On or about November 16, 2022, Individual 3 sent a text message to **STANLEY GORDON VAN METER II** that stated, in part, "We are good to go." **VAN METER II** responded, "Ok" "I'm going to tell the guys to start shipping now."

29. On or about November 21, 2022, **STANLEY GORDON VAN METER II** sent a text message to Individual 3 that stated "We are ramping up on marketing. I think u will net out about $10 - $14K per day."

30. On or about November 30, 2022, **STANLEY GORDON VAN METER II** sent a text message to Chantal Swart that stated "Is anyone u know doing Medicare test kits?" Swart

responded, "Yes" "Me."

31. On December 15, 2022, Chantal Swart sent an email to **STANLEY GORDON VAN METER II** attaching a spreadsheet listing 38,134 "Total Orders," i.e. Medicare beneficiaries, entitled, "Premier1 Labs – Total Billing Report (Excluding Complaints Failures Defy Re-Orders).xlsx."

32. On or about January 3, 2023, **STANLEY GORDON VAN METER II** paid Company 3 $100,000.

33. On or about January 16, 2023, Medek, under **STANLEY GORDON VAN METER II**'s direction, emailed Individual 1 a $1,114,888 invoice that billed Company 1 $10.41 per "COVID-19 Test Kit Sale[]" for the 8 beneficiaries that "Monsi" provided **VAN METER II**. The invoice also billed Company 1 $9.40 per "COVID-19 Test Kit Sale[]" for the 98,928 "Premier" Labs beneficiaries that Chantal Swart provided **VAN METER II**.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purposes of alleging forfeiture to the United States of America of certain property in which the defendant, **STANLEY GORDON VAN METER II**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, a conspiracy to violate Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and 1320a-7b(b)(2)(A), as alleged in this Information, the Defendant, **STANLEY GORDON VAN METER II**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any property subject to forfeiture as a result of any act or omission of the Defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(2).

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

JOSEPH EGOZI
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 26-CR-20118-ALTMAN/LETT

v.

STANLEY GORDON VAN METER II,
_____________________________________/

CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**
New Defendant(s) (Yes or No) ______
Number of New Defendants ______
Total number of new counts ______

**Court Division** (select one)
☑ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: ________________
4. This case will take 0 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| (Check only one) | | (Check only one) |
|---|---|---|
| I | ☑ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☐ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☑ Felony |
| V | ☐ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge ________________ Case No. ________________
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge ________________ Magistrate Case No. ________________
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge ________________ Case No. ________________
9. Defendant(s) in federal custody as of ________________
10. Defendant(s) in state custody as of ________________
11. Rule 20 from the __________ District of ______________
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? Yes
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: ________________
Joseph Egozi
Assistant United States Attorney
SDFL Court ID No. A5502707

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: STANLEY GORDON VAN METER II

**Case No**: ______________________

Count #1:

Conspiracy to Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

*** Max. Term of Imprisonment: Five (5) Years**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: Three (3) Years**
*** Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 26-CR-20118-ALTMAN/LETT

**BOND RECOMMENDATION**

DEFENDANT: Stanley Gordon Van Meter

**Personal Surety and Cash**

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: [signature]
AUSA: Joseph Egozi

Last Known Address: [redacted].

[redacted]

What Facility:

Agent(s): **HHS OIG S/A Orlando Buissereth**

(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
Stanley Gordon Van Meter II,
*Defendant*

Case No. **26-CR-20118-ALTMAN/LETT**

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: ______________

______________________
*Defendant's signature*

______________________
*Signature of defendant's attorney*

*Printed name of defendant's attorney*

______________________
*Judge's signature*

______________________
*Judge's printed name and title*